# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MASSACHUSETTS MUTUAL | § | |
| LIFE INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-1826 |
| | § | |
| GIDEON LAMAR SANDERS JR. AND | § | |
| BANCO POPULAR, N.A., TEXAS, | § | |
| | § | |
| | § | |
| *Defendant*s. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff Massachusetts Mutual Life Insurance Company's ("MassMutual") motion for summary judgment (Dkt. 18), defendant Gideon Lamar Sanders's ("Sanders") cross-motion for summary judgment (Dkt. 22), and defendant Banco Popular, N.A., Texas's ("Banco Popular") motion for summary judgment (Dkt. 24).  Having considered the motions, related documents, and applicable law, the court is of the opinion that MassMutual's motion for summary judgment (Dkt. 18) should be GRANTED, Banco Popular's motion for summary judgment (Dkt. 24) should be GRANTED, and Sanders's cross motion for summary judgment (Dkt. 22) should be DENIED.

## I. BACKGROUND

This is an interpleader action.  In January 2001, Banco Popular issued a loan to Sanders, his wife Jackie Gold Sanders,[1] and Skyline Messenger Service, Inc. for $1,100,000 pursuant to the Small Business Administration program.  Dkt. 25.  As part of the loan, Banco Popular required Sanders and Mrs. Sanders each to obtain term life insurance policies and assign the policies to Banco Popular

---

[1] The court will refer to Gideon Lamar Sanders as "Sanders" and to Jackie Gold Sanders as "Mrs. Sanders."

as collateral to secure the U.S. Small Business Note.  *Id.*  MassMutual issued an adjustable premium term life insurance policy with a face value of $440,000 on Mrs. Sanders's life to Mrs. Sanders.[2]  *Id.*  Sanders was named the beneficiary of Mrs. Sanders's policy.  Dkt. 18, Exh. 1 at App. 044.  Mrs. Sanders executed an Assignment of Life Insurance Policy as Collateral ("Assignment"), which purported to transfer her life insurance policy to Banco Popular.  Dkt. 19, Exh. 1 at App. 058-61.  Michael Newhouse, the soliciting agent who assisted Mrs. Sanders with her insurance application, signed the Assignment as a witness.[3]  *Id.*; Dkt. 18.  Mrs. Sanders submitted the Assignment to MassMutual.  Dkt. 18.  MassMutual acknowledged receipt of the Assignment by placing a "received" stamp on it.  *Id.* & Exh. 1 at App. 059.

On September 12, 2005, Mrs. Sanders died of a myocardial infarction associated with lung cancer.  Dkt. 18; Dkt. 19-2 at App. 099.  On October 13, 2005, Sanders filed for bankruptcy under Chapter 7 of the U.S. Bankruptcy Code.  Dkt. 19-2 at App. 105.  Sanders's counsel listed the Banco Popular loan on Schedule F, which is the portion in which debtors list creditors holding *unsecured* nonpriority claims.  Dkt. 18; Dkt. 19-1 at App. 105.  On December 12, 2005, Sanders called MassMutual and reported Mrs. Sanders's passing. Dkt. 18; Dkt. 19 at App. 075.  Deborah Robinson, a claim examiner for MassMutual, wrote Sanders a letter on December 15, 2005, advising him that he was the beneficiary of the policy but that MassMutual's records contained a collateral assignment to Banco Popular.  Dkt. 18; Dkt. 19 at App. 079.  Robinson further informed Sanders that he needed to review and complete the claim packet, including Part VII-10, which needed to be completed by both Sanders and Banco Popular.  *Id.*  Robinson's letter advised that Sanders needed to "be sure that the exact dollar amount that is to be paid to the assignee is indicated on the blank line provided."

---

[2]  An affiliate of MassMutual, C.M Life Insurance Company, issued a life insurance policy with a face value of $660,000 on Sanders's life.  Dkt. 18.

[3]  The Assignment was not notarized.

2

*Id.* She instructed Sanders to return the completed packet to her with a certified death certificate. *Id.* Sanders did not respond to this letter.

On February 3, 2006, the Bankruptcy Court entered an order of discharge. Dkt 19-2 at App. 112. On April 4, 2006, Robinson sent Sanders a follow-up letter and enclosed another set of forms. Dkt. 19-1 at App. 087. On April 21, 2006, Sanders called Robinson and stated that Banco Popular had "called their note and put them out of business" in June 2005, that they had abandoned the messenger company, that he, Mrs. Sanders, and the company had all filed for bankruptcy, and that his indebtedness to Banco Popular had been discharged through his bankruptcy. Dkt. 18. Robinson asked Sanders to fax the discharge papers to MassMutual. *Id.*

Sanders sent a completed claims packet to MassMutual in May 2006, but he did not secure Banco Popular's signature on Part VII-10, relating to the Assignment. *Id.* Robinson emailed Sanders to inform him that she had received the Claims Packet, but she advised him that she still needed the paperwork proving that the debt to Banco Popular was discharged in his bankruptcy. *Id.* On June 12, 2006, Sanders's bankruptcy counsel, James B. Jameson, sent MassMutual a letter stating that the Banco Popular debt had been discharged during the bankruptcy and attaching Sanders's Schedule F and the discharge order. Dkt. 19, App. 105-12.

On June 21, 2006, MassMutual responded to Jameson's letter, advising that the debt to Banco Popular was a *secured* debt and requesting a copy of the secured claims Sanders claimed during the bankruptcy proceeding. Dkt. 18; Dkt. 19 at App. 115. By September 2006, Jameson had not responded to this request, so MassMutual sent follow up letters to both Jameson and Sanders. *Id.*; Dkt. 19 at App. 116-17. Sanders responded via email on November 1, 2006, but he did not submit any information about whether the Banco Popular note was a secured claim. Dkt. 18; Dkt. 19 at App. 118. On December 8, 2006, MassMutual sent another letter to Jameson and requested

3

that he contact the bankruptcy trustee to determine the disposition of the assignment to Banco Popular if he could not provide a list of the secured claims.  Dkt. 18; Dkt. 19 at App. 119.

On August 7 2007, MassMutual contacted Banco Popular.  Dkt. 18.  MassMutual stated that it had "been unable to confirm that the assignment, a secured liability, ha[d] been released via bankruptcy proceedings," and it asked Banco Popular to provide "a written statement reflecting the bank's position with regard to the assignment."  Dkt. 18; Dkt. 19 at App. 120.  By November, MassMutual had not received a response.  MassMutual sent follow up letters to Banco Popular on November 7, 2007 and February 15, 2008.  Dkt. 18.  On September 30, 2008, Robinson sent an employee of Banco Popular with whom she had become acquainted relating to a different policy an email inquiring about Banco Popular's position with regard to the Sanders Assignment.  Dkt. 18.  On October 2, 2008, Banco Popular sent MassMutual a payoff statement indicating that the total payoff for the Sanders's loan was $884,744.12, and it requested a copy of the Assignment, which MassMutual provided.  *Id.*

On November 4, 2008, MassMutual wrote a letter to Sanders informing him that Banco Popular had advised MassMutual that it would be making a claim for the entire proceeds of the policy and that it needed a copy of the portion of his bankruptcy filing listing the secured claims.  Dkt. 18; Dkt. 19 at App. 138.  On November 17, 2008, Sanders's bankruptcy attorney, Jameson, wrote a letter to MassMutual advising that he had forwarded Sanders's Schedule F and that he had not forwarded the Schedule D, which listed secured creditors, because Schedule D contained no creditors.  Dkt. 18; Dkt. 19 at App. 139-40.  Jameson stated that the debt was listed in Schedule F

rather than D because it was a personal guaranty.  Jameson claimed that the secured debt was incurred by Skyline Messenger Service, not Sanders.[4]  *Id.*

In July 2009, Sanders phoned Robinson and advised her that he would like to come to an agreement with Banco Popular.  Dkt. 18.  By January 2010, Robinson had not heard anything from Sanders regarding the status of the attempt to reach an agreement, so she called him and told him she was going to contact the bankruptcy trustee.  Dkt. 18.  She left a voicemail with the bankruptcy trustee on January 21, 2010.  *Id.*

On March 4, 2010, Marc Ariza sent a letter to Robinson advising that he and Addison Welch were now representing Sanders and demanding that MassMutual pay all of the policy proceeds to Sanders.  *Id.*; Dkt. 19 at App. 204-05.  On April 1, 2010, Robinson informed Welch and Banco Popular that there were competing interests in the proceeds and MassMutual had reasonable doubt as to the correct beneficiary.  MassMutual advised that if it did not receive a written agreement between Sanders and Banco Popular regarding how the proceeds should be distributed within 30 days, it would file an interpleader action.  Dkt. 18; Dkt. 19 at App. 207-210.  The parties did not reach an agreement, and MassMutual filed this interpleader action on May 21, 2010.  Dkt. 1.  The complaint and an accompanying motion sought to deposit the proceeds of the policy into the court's registry, and the complaint requested that the court discharge MassMutual from all liability to Sanders and Banco Popular with respect to the proceeds.  *Id.*; Dkt. 3.  On June 14, 2010, Banco Popular filed its answer and claimed all of the proceeds of the policy.  Dkt. 6.  It also requested that the court discharge MassMutual from all liability and dismiss MassMutual from the lawsuit.  *Id.*  On June 15, 2010, the court granted MassMutal's motion to deposit the funds into the court's registry.

---

[4]  The Assignment specifically states that its purpose is to serve "as collateral security for any and all liabilities of the undersigned," so it purports to be collateral for a loan made to Mrs. Sanders.  Dkt. 19-1 at App. 058.  Moreover, the SBA Note specifically indicates that the borrowers are Gideon L. Sanders, Jackie G. Sanders, and Skyline Messenger Service, Inc.  Dkt. 25 at Exh. A (App. 004).

Dkt. 7.  On June 17, 2010, Sanders filed his answer and claimed all of the proceeds of the policy.

Dkt. 9.  Unlike Banco Popular, Sanders requested that the court deny MassMutual's prayer for

discharge from liability and request for dismissal from the lawsuit.  *Id.*

On December 15, 2010, MassMutual filed a motion for summary judgment in which it argues

that all of the elements for the first stage of interpleader are met and that it is entitled to summary

judgment on its interpleader claim, dismissal from the lawsuit with prejudice, and attorneys' fees.

Dkt. 18.  On January 5, 2011, Banco Popular filed a response to MassMutual's motion for summary

judgment in which it expressed that it is not opposed to the dismissal of MassMutual from the

lawsuit.  Dkt. 20.  On January 24, 2011, Sanders filed a response and a cross motion for summary

judgment, arguing that MassMutual should have paid the proceeds to Sanders as the rightful

beneficiary of Mrs. Sanders's policy and that Banco Popular has no right to claim any of the

proceeds.  Dkt. 22.  MassMutual filed a response to Sanders's cross motion for summary judgment

on January 24, 2011.  Dkt. 23.  On February 8, 2011, Banco Popular responded to Sanders's motion

for summary judgment and filed its own motion for summary judgment in which it argues that the

policy was not part of the bankruptcy estate because Mrs. Sanders had assigned the right, title, and

interest in the policy to Banco Popular.  Banco Popular contends that the bankruptcy proceeding did

not affect its rights with respect to the policy.  *Id.*  Thus, Banco Popular contends that it is entitled

to the proceeds of the policy, and an award of all of the funds held in the court's registry minus the

reasonable and necessary attorneys' fees awarded to MassMutual.  *Id.*  It also moves for a take

nothing judgment against Sanders as well as a judgment requiring Sanders to pay Banco Popular's

allowable costs and attorneys' fees.  *Id.*

## II. Legal Standard

### A.    Interpleader

Under 28 U.S.C. § 1335, district courts have original jurisdiction of any civil action in the nature of interpleader that is filed "by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more" if there are two or more adverse claimants of diverse citizenship who are claiming or may claim to be entitled to the money or property and the plaintiff has deposited the money or property into the registry of the court. 28 U.S.C. § 1335(a).  "The legislative purpose of an interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund." *Rhoades v. Casey*, 196 F.3d 592, 600 n.8 (5th Cir. 1999) (quoting *Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992)).  "An interpleader action typically involves two stages.  In the first stage, the district court decides whether the requirements for rule or statutory interpleader have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund."  *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999) (citing Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1714 (1986)).  If the requirements for interpleader have been met, then the district court must "make a determination of the respective rights of the claimants."  *Id.*  If there is no issue of material fact regarding entitlement to the fund, the second stage may be adjudicated at summary judgment.  *Id.*

### B.    Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id* .  "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).  The

8

court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

#### A. MassMutual's Motion

Banco Popular does not oppose MassMutual's motion for summary judgment. Sanders, however, opposes the motion, claiming that he is the rightful beneficiary and that MassMutual should have paid the proceeds to him rather than filing this action. Dkt. 22. Sanders argues that MassMutual was required, under the Texas Insurance Code, to pay the funds to him within 30 days "after Mass Mutual confirmed that Mr. Sanders had satisfied MassMutual's requirements for this claim."[5] *Id.* at 2. Sanders claims that MassMutual should not be discharged from the action because "the facts properly construed include Mr. Sanders' claim against Mass Mutual for a bad faith cause of action." *Id.* Sanders alleges that MassMutual filed this action in an effort to help Banco Popular

---

[5] Sanders cites Article 21.55, Section 6 of the Texas Insurance Code, which has been repealed. Article 21.55 involved the prompt payment of claims, and the portion of the Texas Insurance Code has been recodified at section 542.051 *et seq.* of the Texas Insurance Code. *See* Texas Ins. Code, Title 5 (disposition table).

undermine the bankruptcy injunction.  Sanders additionally argues that he is entitled to attorneys' fees due to MassMutual's alleged bad faith.  Dkt. 22.

A party seeking interpleader must show that there is a possibility that two or more parties will claim the fund at issue.  *See Rhoades*, 196 F.3d at 601 (finding that an interpleader action was proper when the plaintiff showed that there was a single fund and that there were "several adverse parties who *could have* attempted to claim" the fund (emphasis added)).  Here, MassMutual must show that there was a possibility that both Sanders and Banco Popular would claim the insurance proceeds. The terms of the policy clearly allow the policy to be assigned:

> This policy may be assigned.  But for any assignment to be binding on us, we must receive a signed copy of it at our Home Office.  We will not be responsible for the validity of any assignment.  Once we receive the signed copy, the rights of the Owner and the interest of any Beneficiary or any other person will be subject to the assignment.

Dkt. 19-1 at App. 028.  MassMutual received a signed copy of the Assignment.  The Assignment was not notarized, but the existence of a signed agreement, even if not notarized, provided sufficient cause for MassMutual to believe that Banco Popular would assert a claim pursuant to the Assignment—particularly in light of MassMutual's express notice to Mrs. Sanders in the policy that it would not be responsible for the validity of any assignment.  Requiring MassMutual to reach a legal conclusion as to the validity of the Assignment would defeat the purpose of an interpleader action.  If MassMutual had unilaterally determined that the Assignment was not valid and paid the insurance proceeds to Sanders, it would have opened itself up to a lawsuit by Banco Popular and potential double liability.  MassMutual therefore appropriately requested that Sanders obtain Banco Popular's verification that it was not claiming the funds.  Sanders failed to secure this verification. MassMutual likewise was not required to pay the funds to Sanders after Sanders's counsel provided the order discharging the bankruptcy debts, because MassMutual had a reasonable doubt as to

10

whether the debt, which it reasonably considered a secured debt, had been discharged.  Again, requiring MassMutual to draw the legal conclusion that the debt had been discharged when there was no evidence indicating it had been listed as a secured debt during the bankruptcy even though the debt was secured by the policy, absent a court's direction, would defeat the purpose of interpleader. Because there were two potential claimants to a single fund, it was proper for MassMutual to file an interpleader action.

Regardless, Sanders asserts that MassMutual should not be dismissed from this action because MassMutual violated the Texas Insurance Code by not paying the proceeds to him, as the beneficiary of the policy, within 30 days; and MassMutual acted in bad faith in an effort to help Banco Popular undermine the bankruptcy injunction.  Sanders, however, has not asserted any counterclaims against MassMutual.  In an interpleader action, "[o]nce the stakeholder joins the claimants, a claimant may file a counterclaim against the stakeholder as an opposing party."  *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 881 (5th Cir. 1998).  If the counterclaim arises out of the same transaction or occurrence that is the subject matter of the stakeholder's claim, the counterclaim is compulsory.  Fed. R. Civ. P. 13; *Deshotel*, 142 F.3d at 881.  In the Fifth Circuit, a claim that arises from the same "aggregate of operative facts" as the original claim is a compulsory counterclaim.  *Plant v. Blazer Financial Servs., Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir. 1979). If a party asserting a compulsory counterclaim had the claim at the time of service of the complaint, it must assert the compulsory counterclaim in its responsive pleading. Fed. R. Civ. P. 13.  "[F]ailure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim."  *Deshotel*, 142 F.3d at 882.

Here, Sanders's arguments relating to the Texas Insurance Code and bad faith arise from the same "aggregate of operative facts" as MassMutual's action.  Thus, the allegations should have been

asserted in a counterclaim along with Sanders's answer.  Since they were not, they are not properly before the court.  The *only* issue before the court with regards to MassMutual's motion for summary judgment is whether the requirements of interpleader are met, and Sanders has presented no issue of material fact with regard to MassMutual's claim that there are multiple claimants to a single fund, thus necessitating an interpleader action.

MassMutual has met the requirements of interpleader.  It has paid the insurance proceeds into the court's registry, and it is no longer a necessary party to this action.  MassMutual is therefore DISMISSED from this case, WITH PREJUDICE.

## B.    Sanders's and Banco Popular's Motions

Sanders and Banco Popular have both moved for summary judgment, thus bringing the court to the second stage of the interpleader action—determining the rights to the fund.  Sanders claims that he is entitled to the entire fund, as well as attorneys' fees, because (1) the assignment "never came to fruition" because neither Sanders nor Banco Popular endorsed the Assignment; (2) Banco Popular was an unsecured creditor because it never acknowledged the Assignment; (3) Banco Popular's claim for the fund is barred by the doctrines of res judicata and laches because Banco Popular did not timely assert the claim or assert it during the bankruptcy creditors' meetings; (5) Sanders may avoid Banco Popular's security interest because it is not properly perfected under state law; and (6) the bankruptcy injunction precludes Banco Popular's claim.  Banco Popular argues that it is entitled to summary judgment because (1) the Assignment is valid and enforceable as it contains Mrs. Sanders's signature; (2) res judicata, laches, and avoidance are all affirmative defenses which Sanders may not assert now because he failed to state these affirmative defenses in his answer; (3) res judicata does not apply and Banco Popular's post-bankruptcy claim to the policy proceeds does not violate bankruptcy rules because the policy was not part of Sanders's bankruptcy estate; and (4)

Banco Popular had a lien on the policy, and liens pass through bankruptcy unaffected.  Sanders and Banco Popular each seek an award of attorneys' fees.

### 1.        Validity of Assignment

Sanders's first argument regarding the validity of the Assignment is that he, as the designated beneficiary, did not sign it, so it was not valid.  However, Sanders does not present the court with any cases supporting this contention, and the court can find none.  Sanders admits that his interest as a beneficiary "is, if anything, a lesser interest – a terminable interest at that.  'The beneficiary has only an inchoate right . . . .'" Dkt. 22 at 10 (quoting *Swygert v. Durham Life Ins. Co.*, 229 S.E.2d 478, 480 (S.C. 1956).  Under the terms of the policy, the owner of the policy has the right to change beneficiaries or assign the policy, and the beneficiary's signature is only required when the beneficiary is designated as an "irrevocable beneficiary."  *See* Dkt.19-1 at App. 028 ("Policy Ownership" portion of policy) (requiring consent of an "irrevocable beneficiary" to make certain changes but otherwise indicating that while the insured is living, the owner of the policy "may exercise all rights given by this policy or allowed by us," which includes changing beneficiaries and assigning the policy).  There is no indication in the policy or elsewhere in the record that Sanders was an irrevocable beneficiary.  Therefore, Sanders's signature was not required on the Assignment.

Sanders next argues that the Assignment was invalid because Banco Popular did not sign it.  However, an "assignment is 'a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or third person.'" *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005) (quoting *Wolters Vill. Mgmt. Co. v. Merchs. & Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir. 1955)).

> It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee. The manifestation may be made to the other or to a third person on his behalf and, except as provided by statute or by contract, may be made either orally or by a writing.

Restatement (Second) Contracts § 324 (1981); *see Harris Methodist*, 426 F.3d at 334 (citing this section approvingly). Since, in general, a writing is not necessary to validly assign a right, certainly the endorsement of the third party to whom the right is assigned is not necessary to effectuate an assignment. Obviously, Mrs. Sanders intended to transfer her right to the insurance policy. She obtained the policy so that she could assign it to Banco Popular as collateral for the $1.1 million loan, and, after she and Sanders endorsed assignments of their respective policies to Banco Popular, they received the loan. The Assignment is valid.

## 2.     Affirmative Defenses

Sanders claims that Banco Popular's claim is barred by the doctrines of res judicata, laches, and avoidance. Dkt. 22. According to Sanders, Banco Popular's claim that it is a secured creditor is barred by the doctrine of res judicata because Banco Popular "was on notice of the bankruptcy proceedings, had notice of its designation as an unsecured creditor, and, notwithstanding any prior claim, failed to respond, object, or pursue any claim that it had though given ample opportunity to do so." Dkt. 22 at 13. Sanders argues that Banco Popular is barred by laches due to its delay in asserting its claim to the proceeds of the policy. *Id.* at 16. Sanders also claims that he may avoid Banco Popular's security interest because it was not properly perfected under state law.[6] *Id.* at 18. Banco Popular argues that Sanders may not assert these three defenses because they are affirmative defenses, and Sanders did not assert these affirmative defenses in his answer. Dkt. 24. Under Federal Rule of Civil Procedure 8(c), "In responding to a pleading, a party must affirmatively state

---

[6] This argument appears to be predicated on Sanders's argument that the Assignment was not valid. *See* Dkt. 22.

any *avoidance* or affirmative defense, including: . . . *laches*; [and] . . . *res judicata* . . . ." Fed. R.

Civ. P. 8(c) (emphasis added). Sanders did not plead avoidance, laches, or res judicata, affirmatively

or otherwise. Thus, he may not now assert these defenses.

### 3.     Impact of Bankruptcy

Sanders appears to argue that the "automatic and permanent injunction against a creditor's

attempt to recover those debts which were a personal liability of the debtor prior to bankruptcy"

prohibits Banco Popular from claiming the proceeds of the policy. Dkt. 22 at 17. Sanders essentially

claims that his debt to Banco Popular was discharged during the bankruptcy, and it is too late for

Banco Popular to change this disposition. Banco Popular, however, argues that the policy was not

property of Sanders's bankruptcy estate, so Sanders's bankruptcy proceeding has no impact on its

proceeds. Dkt. 24 at 9. According to Banco Popular, *Banco Popular*, as assignee of Mrs. Sanders's

right to the policy, effectively took her place as owner of the policy.[7]

Banco Popular cites *Estate of Lellock v. The Prudential Ins. Co. of Am.*, 811 F.2d 186 (3d

Cir. 1987) in support of its argument. In *Lellock*, Robert Lellock received a loan from the National

Bank of the Commonwealth, which was guaranteed by the Small Business Administration. *Lellock*,

811 F.2d at 187. The Small Business Administration guaranteed the loan on the condition that

Lellock provide, as collateral for the guarantee, an assignment of a life insurance policy on Lellock's

life. *Id.* Lellock named his wife as beneficiary of the policy. *Id.* Lellock assigned the policy to the

Small Business Administration. *Id.* Lellock eventually defaulted on the loan, the Small Business

Administration purchased the loan under its guarantee, and the Lellocks filed for bankruptcy. *Id.*

They did not list the policy as security or property, and they did not name the Small Business

---

[7] Sanders obviously did not consider the policy proceeds property of his estate during the bankruptcy, even though Mrs. Sanders had already passed away, because he failed to list his alleged interest in Schedule B, Part 9 of which requires the debtor to list "Interests in insurance polices." Sanders's Schedule B indicates that he had no such interests. Dkt. 19-2 at App. 158-64.

Administration as a creditor.  *Id.*  The bankruptcy court issued an order discharging the Lellock's debts.  *Id.*  When Lellock died two years later, both his widow and the Small Business Administration claimed the proceeds of the policy.  *Id.*  Lellock's estate brought a claim against the insurance company and the Small Business Administration.  *Id.*  The district court for the Western District of Pennsylvania granted summary judgment in favor of the Small Business Administration, holding that the underlying debt was discharged during the bankruptcy, but that the lien the Small Business Administration had on the life insurance policy survived the bankruptcy discharge.  *Id.*

Lellock's estate appealed, claiming that there was no lien on the policy and even if there were, there was no property to which the lien could attach since the proceeds were not available until after Lellock died—which was after the bankruptcy was already over.  *Id.* at 187-88.  The Third Circuit held that there was a valid lien and that because neither Lellock nor the Small Business Administration requested allowance or disallowance of the lien, it "passed through bankruptcy unaffected."  *Id.* at 189.  The Third Circuit also concluded that an unmatured life insurance policy is "property of the estate" in a bankruptcy proceeding.  *Id.*  Additionally, the Third Circuit held that the Small Business Administration had "title and interest in the policy" because Lellock had transferred his rights, and "the fact that the property [was] the property of the [Small Business Association] obviates the need for the policy to pass through the Lellock's bankruptcy estate at all." *Id.* at 190.  As a result, "the Lellocks had no interest—contingent or otherwise—in the life insurance policy.  Because the policy was never reassigned to them, they never reacquired an interest in it." *Id.*

While *Lellock* is not completely analogous to this case, the *Lellock* court's reasoning regarding whether the debtor had an interest in the policy during the bankruptcy proceeding is relevant.  The policy in this case, like the policy in *Lellock*, was assigned to a bank as security for

a loan, and it was the creditor, not the debtor, who held the property interest.  Thus, the discharge of the underlying debt, like the discharge in *Lellock*, did not impact the creditor's interest in the policy.

Banco Popular also points out that, even if the policy were part of the estate, the Assignment created a lien, and liens pass through bankruptcy unaffected.  While a bankruptcy discharge of property subject to a lien extinguishes the right of the lien-holder to pursue an action against the debtor *in personam*, the lien-holder may still pursue an action against the debtor *in rem*.  *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154 (1991).  Thus, even though Sanders's personal liability for the debt to Banco Popular was discharged, Banco Popular still held the collateral—the policy—and the bankruptcy does not affect Banco Popular's right to claim the proceeds of the policy.  Banco Popular still holds its interest in the policy, and Banco Popular is entitled to the proceeds of the policy, which do not exceed the underlying debt that the policy secured.  Accordingly, Banco Popular's motion for summary judgment is GRANTED, and Sanders's motion for summary judgment is DENIED.  Sanders's claim to the proceeds of the policy is DISMISSED WITH PREJUDICE.

## C.    Attorneys Fees

### 1.        Banco Popular's Motion for Attorneys' Fees

Banco Popular moves for an award of attorneys' fees under the Texas Declaratory Judgment Act.  Dkt. 9; Dkt. 24.  The court, however, though sitting in diversity, cannot award attorneys' fees pursuant to the Texas Declaratory Judgment Act because it must apply federal procedural law.  The Texas Declaratory Judgment Act "expressly provides for attorney's fees," but "it functions solely as a procedural mechanism for resolving substantive 'controversies which are already within the jurisdiction of the courts.'"  *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)

(quoting *Housing Authority v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.–Corpus Christi 1002, writ denied)).   Thus, "a party may not rely on the Texas [Declaratory Judgment Act] to authorize attorney's fees in a diversity case because the statute is not substantive law."  *Id.*  The federal Declaratory Judgment Act "does not by itself provide statutory authority to award attorney's fees that would not otherwise be available under [substantive] state law in a diversity action."  *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988); *see Utica Lloyd's*, 138 F.3d at 210.  Accordingly, Banco Popular's motion for an award of attorneys' fees is DENIED.

### 2.      MassMutual's Motion for Attorneys' Fees

MassMutual has requested reasonable attorneys' fees, and Banco Popular is not opposed to this request.  However, Sanders is opposed.  While Sanders's opposition has little relevance at this point because the fees would be deducted from Banco Popular's award, the court will nevertheless briefly address his concerns.

"A district court has the authority to award reasonable attorney's fees in interpleader actions." *Rhoades*, 196 F.3d at 603.  "The award of attorney's fees is in the discretion of the district court, and fees are available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants."  *Id.*  While Sanders agrees that it is "generally" appropriate to award a plaintiff who initiates and interpleader costs and attorney fees, the court should not do so in this case because it is inappropriate to award attorneys' fees to a "'plaintiff who enters the conflict by contesting the ownership of the fund or by disrupting the correct amount of his liability.'"  Dkt. 22 (quoting *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1311 (5th Cir. 1980)).  Additionally, Sanders argues that MassMutual should not be awarded attorneys' fees because the fees were incurred in the normal course of business and because MassMutual waited over five years to either

pay the proceeds or file an interpleader action, allegedly failing to pay interest on the funds. Dkt. 22.

Sanders correctly points out that a district court may deny attorneys' fees to a plaintiff in an interpleader action if "the interpleader is not a mere stakeholder but has a substantial controversy with one of the claimants." *Phillips Petroleum Co. v. Hazlewood*, 534 F.2d 61, 63 (5th Cir. 1976) (affirming a trial court's denial of attorney fees when the interpleader "actively took a position opposing [one of the claimant's] claims and supporting the claims of [the other claimant]"); *see also Century Ins. C. v. First Nat'l Bank*, 102 F.2d 726 (5th Cir. 1939) (affirming a district court's refusal to allow attorneys' fees when the "equitable plea was only in the nature of interpleader, [but was] filed by way of defense to a real controversy at law"). However, MassMutual does not have a substantial controversy with one of the claimants. It had a valid concern with Sanders's entitlement to the proceeds of the policy, and it was appropriate for MassMutual to ask Sanders for additional documentation before paying the claim. While Sanders may view MassMutual's investigation of his entitlement to the proceeds as being a "controversy" with him, MassMutual was simply attempting to ensure that it paid the proceeds to the proper party. Thus, MassMutual was a "mere stakeholder."

Sanders's argument that MassMutual should not recover attorneys' fees because the fees were incurred in its normal course of business also must be rejected. Sanders cites a case from the Southern District of New York and a case from the Second Circuit in support of this argument. In *Correspondent Services Corp. v. J.V.W. Investments Ltd.*, the district court for the Southern District of New York stated that there is an "ordinary course of business exception" to the general rule that courts award fees and expenses to a disinterested stakeholder, but it awarded fees, anyway, finding that the fees were not incurred in the ordinary course of business. *Correspondent Servs. Corp. v.*

*J.V.W. Invs. Ltd.*, 204 F.R.D. 47, 49 (2001).  In *Travelers Indemnity Co. v. Israel*, Judge Friendly, writing for the Second Circuit, affirmed the district court's denial of attorneys' fees for four insurance companies that were disinterested stakeholders, noting that whether to award fees is at "the sound discretion of the district court."  *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965).  Judge Friendly specifically noted that the court was "not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insured by bringing an action for interpleader."  *Id.*  Here, MassMutual did not simply bring an interpleader action to resolve a minor problem that arose in the ordinary course of business.  MassMutual referred the claim to outside counsel after it attempted, without success, to determine whether it should pay the proceeds of the policy to Sanders, the named beneficiary, or Banco Popular, the assignee.  MassMutual has not requested fees and expenses for the time it expended investigating the claim internally; it has only requested fees and expenses from the time it referred the case to outside counsel.  *See* Dkt. 19-4. MassMutual did not decide to file an interpleader action in response to a "minor problem," and the fees that it requests do not relate to MassMutual's "ordinary course of business."[8]

Finally, Sanders's implication that MassMutual did not file the interpleader action for five years in order to avoid paying interest on the amount is unfounded.  MassMutual deposited the entire face value of the policy "together with interest thereon at the rate of three percent (3%) from September 12, 2005, into the Court's registry."  Dkt. 7.  These funds are being held in an interest bearing account.  *Id.*

The court has reviewed MassMutual's affidavit relating to its costs and fees and finds that the hours expended, the billing rate, and the expenses are reasonable.  *See* Dkt. 19-4.  The court

---

[8]  MassMutual agreed to waive its costs and fees if Sanders would agree to MassMutual's dismissal from this action, but Sanders refused.  Dkt. 23; Dkt. 19-4 at App. 243-44.

hereby AWARDS MassMutual $20,392.11 in attorneys' fees and expenses, which shall be paid from the policy proceeds that are in the court's registry.

### IV. CONCLUSION

MassMutual's motion for summary judgment (Dkt. 18) is GRANTED.  MassMutual is DISCHARGED from all liability to Sanders and Banco Popular with regard to the policy insuring the life of Mrs. Sanders.  Further, MassMutual is AWARDED attorneys' fees and costs in the sum of $20,392.11, which shall be paid from the policy proceeds that are currently in the court's registry.

Sanders's motion for summary judgment (Dkt. 22) is DENIED.  Banco Popular's motion for summary judgment (Dkt. 24) is GRANTED.  Sanders's claim for the proceeds of the policy is DISMISSED WITH PREJUDICE.  Banco Popular shall receive the funds held in the registry of the court, less the $20,392.11 awarded to MassMutual.  Banco Popular's motion for attorneys' fees (Dkt. 24) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on May 9, 2011.

_____
Gray H. Miller
United States District Judge